UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

        Plaintiff,

          v.

111 EAST 88TH PARTNERS,

        Defendant.

16 Civ. 9446 (PGG) (KHP)

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO COMPEL DISCOVERY**

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York
*Counsel for Plaintiff*
Telephone: 212-637-2737
Facsimile:  212-637-2786
sharanya.mohan@usdoj.gov
lauren.lively@usdoj.gov

*Of Counsel:*

SHARANYA MOHAN
LAUREN LIVELY
Assistant United States Attorneys

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ....................................................................................................1

BACKGROUND .........................................................................................................................2

I.   Factual Background......................................................................................................2

II.  Legal Framework for the Government's Claims .....................................................3

III. Discovery of Defendant's Principal..........................................................................5

IV.  Procedural Background ..............................................................................................6

ARGUMENT ..............................................................................................................................6

I.   Legal Standard.............................................................................................................6

II.  The Government is Entitled to Discovery from Mr. Sieratzki.................................9

    A.   The Discovery Sought By the Government Is Not Protected by Attorney-Client
        Privilege..................................................................................................................9

    B.   The Discovery Sought By the Government Is Not Protected Work Product....................16

III. The Government Is Entitled to Depose Opposing Counsel....................................18

CONCLUSION...........................................................................................................................20

# TABLE OF AUTHORIES

**Cases**

*Alcon Labs, Inc. v. Pharmacia Corp.*,
   225 F. Supp. 2d 340 (S.D.N.Y. 2002).....................................................................................19

*Bentley v. Peace & Quiet Realty 2 LLC*,
   367 F. Supp. 2d 341 (E.D.N.Y. 2005) .....................................................................................4

*Bhogaita v. Altamonte Heights Condo. Ass'n, Inc.*,
   765 F.3d 1277 (11th Cir. 2014) ..............................................................................................4

*Brennan Ctr. for Justice at N.Y. Univ. Sch. of Law v. U.S. Dep't of Justice*,
   697 F.3d 184 (2d Cir. 2012)....................................................................................................6

*Chen-Oster v. Goldman, Sachs & Co.*,
   293 F.R.D. 547 (S.D.N.Y. 2013) ...........................................................................................16

*Conte v. Cty. of Nassau*,
   No. 06 Civ. 4746, 2009 WL 1362784 (E.D.N.Y. May 15, 2009)...........................................12

*Fisher v. United States*,
   425 U.S. 391 (1976).................................................................................................................7

*Foster v. City of New York*,
   No. 14 Civ. 4142 (PGG)(JCF), 2016 WL 524639 (S.D.N.Y. Feb. 5, 2016) ..........................17

*Granite Partners v. Bear, Stearns & Co., Inc.*,
   184 F.R.D. 49 (S.D.N.Y. 1999) .............................................................................................17

*Gucci Am., Inc. v. Guess?, Inc.*,
   271 F.R.D. 58 (S.D.N.Y. 2010) ...............................................................................................8

*In re Chevron Corp.*,
   749 F. Supp. 2d 141 (S.D.N.Y. 2010).....................................................................................18

*In re Cty. of Erie*,
   473 F.3d 413 (2d Cir. 2007).....................................................................................................7

*In re General Motors LLC Ignition Switch Litig.*,
   80 F. Supp. 3d 521 (S.D.N.Y. 2015).......................................................................................10

*In re Grand Jury Proceedings*,
   219 F.3d 175 (2d Cir. 2000)...............................................................................................8, 18

*In re Grand Jury Subpoena Dated July 6, 2005*,
   510 F.3d 180 (2d Cir. 2007)................................................................................... 7, 8

*In re Kidder Peabody Secs. Litig.*,
   168 F.R.D. 459 (S.D.N.Y. 1996) ................................................................................. 10

*In re Namenda Direct Purchaser Antitrust Litig.*,
   No. 15 Civ. 7488(CM)(JCF), 2017 WL 3314233 (S.D.N.Y. Aug. 2, 2017) ........................... 16

*In re Sims*,
   534 F.3d 117 (2d Cir. 2008).......................................................................................... 8

*In re Six Grand Jury Witnesses*,
   979 F.2d 939 (2d Cir. 1992)........................................................................................ 10

*In re Subpoena Issued to Dennis Friedman*,
   350 F.3d 65 (2d Cir. 2003).......................................................................................... 18

*John Doe Co. v. United States*,
   350 F.3d 299 (2d Cir. 2003)........................................................................................ 17

*Logan v. Matveevskii*,
   57 F. Supp. 3d 234 (S.D.N.Y. 2014)....................................................................... 14, 19

*Mazzocchi v. Windsor Owners Corp.*,
   204 F. Supp. 3d 583 (S.D.N.Y. 2016)......................................................................... 4, 15

*MHANY Mgmt. Inc. v. Cty. of Nassau*,
   819 F.3d 581 (2d Cir. 2016).............................................................................. 4, 16, 19

*Nimkoff Rosenfeld & Schecter, LLP v. RKO Properties, Ltd.*,
   No. 07 Civ. 7983 (DAB) (HBP), 2016 WL 3042733 (S.D.N.Y. May 24, 2016) ..................... 18

*Schaeffler v. United States*,
   806 F.3d 34 (2d Cir. 2015)........................................................................................... 7

*Scholtisek v. Eldre Corp.*,
   441 F. Supp. 2d 459 (W.D.N.Y. 2006) .......................................................................... 7

*Shinnecock Indian Nation v. Kempthorne*,
   652 F. Supp. 2d 345 (E.D.N.Y. 2009) ........................................................................... 8

*United States v. Adlman*,
   134 F.3d 1194 (2d Cir. 1998)................................................................................. 7, 16

*United States v. Bilzerian*,
   926 F.2d 1285 (2d Cir. 1991)....................................................................................... 8

*United States v. Hylton*,
   944 F. Supp. 2d 176 (D. Conn. 2013)................................................................... 5

*United States v. Mejia*,
   655 F.3d 126 (2d Cir. 2011)................................................................................. 7

*United States v. Nobles*,
   422 U.S. 225 (1975)....................................................................................... 7, 9

*Wultz v. Bank of China Ltd.*,
   304 F.R.D. 384 (S.D.N.Y. 2015) ........................................................................ 17

**Statutes**

42 U.S.C. § 3601 ................................................................................................ 1

42 U.S.C. § 3604 ............................................................................... 3, 4, 10, 19

42 U.S.C. § 3617 ................................................................................................ 4

Fed. R. Civ. P. 26 ......................................................................................... 7, 18

Plaintiff United States of America (the "Government"), by and through its attorney Geoffrey S. Berman, United States Attorney for the Southern District of New York, respectfully submits this memorandum of law in support of its motion to compel discovery from counsel for Defendant, Steven S. Sieratzki.

## PRELIMINARY STATEMENT

In this action, the Government alleges that Defendant 111 East 88th Partners ("Defendant") violated the Fair Housing Act, 42 U.S.C. §§ 3601 *et seq*. ("FHA") by twice denying a reasonable accommodation to a disabled tenant, Gregory Reich ("Complainant") and interfering with Complainant's exercise of his rights under the FHA.  Specifically, the Government contends that Defendant constructively denied Complainant's accommodation requests to keep an emotional support dog in his apartment by requiring the onerous disclosure of detailed medical records and other information, and discriminated against Complainant on the basis of his disability.

The Government is entitled to discovery from Mr. Sieratzki to prove its FHA claims and rebut defenses asserted by Defendant.  Discovery has shown that it was Mr. Sieratzki who reviewed Complainant's reasonable accommodation requests and wrote the two letters constructively denying those requests.  Defendant wholly relied on Mr. Sieratzki to craft the responses, and thus Mr. Sieratzki played a pivotal role in the conduct that underlies the Government's claims.  As Defendant is now arguing that the responses to Defendant's requests were not discriminatory, and legitimately sought information to be used to make a determination as to the requests, the Government is entitled to take discovery from the person who penned those responses.  Defendant has put the motivation behind the responses at issue, waiving any privilege that may have applied.

# BACKGROUND

## I.  Factual Background

As the Court is aware, Complainant is a rent-controlled tenant in a unit owned by Defendant located at 111 East 88th Street, New York, New York.  (Dkt. No. 31, "Am. Compl." ¶ 17.)  In the spring of 2015, Complainant was diagnosed with end-stage renal disease, and due to that diagnosis and the invasive and extensive treatment required, his emotional condition worsened.  (*Id.* ¶¶ 15, 27-28.)  In June 2015, Complainant requested a reasonable accommodation from Defendant to be permitted to keep his emotional support dog despite the terms of his lease, which prohibit tenants from keeping dogs.  (*Id.* ¶¶ 26-28.)  Complainant submitted letters from his then-physician as well as his therapist in support of his request.  (*Id.*)  In response, Defendant, through counsel, sent Complainant a letter response.  Defendant's letter demanded that, within ten days, Complainant provide: (1) copies of his therapist's session notes from May 2014 through present; and (2) Complainant's "medical records and medical history, including but not limited to medical management provided, tests conducted with their results, glomerular filtration rate, MRI, CT scan, ultrasound or contract x-ray" from his doctor at the time.  (Declaration of Sharanya Mohan, dated June 25, 2018 ("Mohan Decl." or "Mohan Declaration"), Ex. B.)  Finding these requests to be so burdensome as to constitute a denial of his request, Complainant filed a complaint with the U.S. Department of Housing and Urban Development ("HUD").  (*Id.* ¶¶ 11, 31.)  After HUD issued a charge of discrimination, the Government brought this action on December 7, 2016.  In the meantime, Defendant pursued eviction proceedings against Complainant, which were stayed pending the outcome of the HUD complaint.  (Am. Compl. ¶ 25.)

Complainant's dog passed away in April 2017, while this action was pending.  (*Id.* ¶ 33.)
On June 7, 2017, Complainant made another reasonable accommodation request so as to be
permitted to adopt a new dog for emotional support.  Complainant enclosed a letter from his
current doctor, which described among other things that Complainant received hemodialysis at
home five times a week for his end-stage renal disease, and a letter from his therapist, noting that
disallowing Complainant a reasonable accommodation would "be a serious threat to his health
and his life."  (*Id.* ¶ 34.)  On June 19, 2017, Defendant's counsel, Mr. Sieratzki, responded to
Complainant's request and again demanded an excessive amount of medical records and
information; and reserved Defendant's right to "supplement" the response once it received the
requested information as well as information provided during discovery.  (*See id.* ¶ 35; Mohan
Decl. Ex. C.)  In its amended complaint, filed September 19, 2017, the Government alleged that
Defendant further violated the FHA by constructively denying Complainant's June 2017 request.
(Am. Compl. ¶¶ 37, 39.)  Defendant has since served Complainant with a notice to cure,
commencing the process to restart eviction proceedings.

## II.  Legal Framework for the Government's Claims

The Government alleges that Defendant violated Sections 3604(f)(3)(B) and 3604(f)(2)
of the FHA through its responses to Complainant, resulting in a constructive denial of
Complainant's June 2015 and June 2017 requests for accommodation.  (Am. Compl. ¶¶ 40, 41.)
To prove a violation of Section 3604(f)(3)(B), which prohibits the "refusal to make reasonable
accommodations . . . when such accommodations may be necessary to afford [a disabled] person
equal opportunity to use and enjoy a dwelling," the Government must show that: (1)
Complainant suffers from a disability; (2) Defendant knew or reasonably should have known of
the disability; (3) an accommodation may be necessary to afford Complainant an equal

opportunity to use and enjoy the dwelling; and (4) Defendant refused to make the accommodation. *Bentley v. Peace & Quiet Realty 2 LLC*, 367 F. Supp. 2d 341, 345 (E.D.N.Y. 2005). The fourth element can be met through proof that Defendant constructively denied the requests through its onerous demands for further information. *See Bhogaita v. Altamonte Heights Condo. Ass'n, Inc.*, 765 F.3d 1277, 1287 (11th Cir. 2014) (housing providers "need only the information necessary to apprise them of the disability and possible need for accommodation" and cannot demand "extraneous information").

To prove Defendant violated Section 3604(f)(2), the Government must show that (1) Complainant is a member of a protected class; (2) Defendant took adverse action against him; and (3) the adverse action took place "under circumstances giving rise to an inference of discrimination." *Mazzocchi v. Windsor Owners Corp.*, 204 F. Supp. 3d 583, 615 (S.D.N.Y. 2016). If Defendant then shows "a legitimate, non-discriminatory reason for the adverse action," the Government must "prove that the defendant[] intentionally discriminated against [Complainant] on a prohibited ground," *id.* (citations omitted), by showing that the action "was motivated, at least in part, by an impermissible reason," *MHANY Mgmt. Inc. v. Cty. of Nassau*, 819 F.3d 581, 613 (2d Cir. 2016).

Defendant's actions also constitute a violation of 42 U.S.C. § 3617, which bars efforts to "coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed . . . any right granted or protected by" 42 U.S.C. § 3604. As alleged, Defendant's responses to the reasonable accommodation requests, which requested duplicative and burdensome information from Complainant, sought to discourage him from further pursuing his right to a reasonable accommodation for an emotional support animal.

Finally the Government is seeking punitive damages on behalf of Complainant, for which it must show, for example, wanton or willful conduct by Defendant.  *United States v. Hylton*, 944 F. Supp. 2d 176, 197 (D. Conn. 2013).

## III.   Discovery of Defendant's Principal

On October 30, 2017, in response to the Government's interrogatories, Defendant identified two individuals as having received and/or participated in reviewing and responding to Complainant's two reasonable accommodation requests:  (1) Robert Ernstoff, one of two general partners of Defendant, and (2) Mr. Sieratzki, Defendant's counsel.  (Mohan Decl. Ex. D.)  On November 20, 2017, the Government deposed Robert Ernstoff.  Mr. Ernstoff testified that he received the June 2015 request and discussed it with Mr. Sieratzki, but he did not review the accompanying letter from Complainant's doctor.  (Transcript of the Deposition of Robert Ernstoff ("Tr.") at 92-95.)[1]  When Mr. Ernstoff was asked whether he developed the specific demands contained in Defendant's June 2015 response, Mr. Sieratzki instructed him not to answer on attorney-client privilege grounds.  (*Id.* at 105.)  Ernstoff testified that "[s]ince the letter was written and the request was made by my attorney, you would have to ask my attorney" for the reason behind one of the demands in the response letter.  (*Id.*)  As for the June 2017 request, Mr. Ernstoff testified that he had reviewed Complainant's request with Mr. Sieratzki (*id.* at 111), but did not recall reviewing the enclosed letters from Complainant's doctor and therapist, and did not recall seeing them until the day before his deposition (*id.* at 113-14). While Mr. Ernstoff "discussed the essence" of the response with his attorney, he "relied on [Sieratzki]" to "put in the detailed information . . . which would be required to make a decision"

---

[1] Relevant portions of the transcript are attached to the Mohan Declaration as Exhibit A.

5

as to the request.  (*Id.* at 117, 121.)  Moreover, Mr. Ernstoff was not aware that extensive

medical records already had been produced in this litigation (*id.* at 124), and did not learn the

definition of end-stage renal disease until the day before the deposition, when Mr. Sieratzki

explained it to him (*id.* at 115-16).

## IV.   Procedural Background

The parties completed fact discovery on December 26, 2017.  Prior to that date, on

December 11, 2017, the Government requested an extension of fact discovery in order to permit

the Government to obtain internal approvals to serve Mr. Sieratzki with subpoenas for discovery,

or in the alternative, for the Court to set a briefing schedule as to the Government's anticipated

motion to compel such discovery.  (Dkt. No. 37.)  On January 22, 2018, the Government

received all internal approvals and informed the Court as such.  (Dkt. No. 41.)  The subpoenas

proposed by the Government are attached to the Mohan Declaration as Exhibits E and F.  As

reflected in the subpoenas, the Government seeks "all documents relating to [Mr. Sieratzki's]

review of or response to" the June 2015 and June 2017 reasonable accommodation requests,

including any draft responses, as well as testimony from Mr. Sieratzki.

On February 28, 2018, the Court held a pre-motion conference on the Government's

request.  At that conference, the parties agreed to appear at a settlement conference, and the

Court indicated that, if the parties did not settle, it would set a briefing schedule for the

Government's motion.  (Dkt. No. 50.)

## ARGUMENT

## I.  Legal Standard

"The attorney-client privilege protects communications (1) between a client and his or

her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of

obtaining or providing legal assistance.'" *Brennan Ctr. for Justice at N.Y. Univ. Sch. of Law v. U.S. Dep't of Justice*, 697 F.3d 184, 207 (2d Cir. 2012) (internal quotation marks omitted).  The burden is on the party asserting the attorney-client privilege to establish each element of the three-part standard.  *See United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011).  Any ambiguities as to whether the essential elements have been met are construed against the party asserting the privilege.  *See Scholtisek v. Eldre Corp.*, 441 F. Supp. 2d 459, 463 (W.D.N.Y. 2006) (listing cases).   In order to balance the competing values of confidentiality and public disclosure, the privilege "applies only where necessary to achieve its purpose" and narrowly protects "only those disclosures necessary to obtain informed legal advice . . . ."  *Fisher v. United States*, 425 U.S. 391, 403 (1976); *see also In re Cty. of Erie*, 473 F.3d 413, 418 (2d Cir. 2007) (noting that the court "construe[s] the privilege narrowly because it renders relevant information undiscoverable").

The work product protection shields from discovery "documents and tangible things that are prepared in anticipation of litigation or for trial."  Fed. R. Civ. P. 26(b)(3). The protection "shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case."  *United States v. Nobles*, 422 U.S. 225, 238 (1975).  The work product protection "is distinct from and broader than the attorney-client privilege."  *Id.* at 238, n.11.  It includes both opinion work product, such as an attorney's mental impressions or legal theories, and fact work product, such as factual investigation results.  *See In re Grand Jury Subpoena Dated July 6, 2005*, 510 F.3d 180, 183 (2d Cir. 2007).  However, work product protection shields only documents prepared "because of the prospect of litigation."  *United States v. Adlman*, 134 F.3d 1194, 1202 (2d Cir. 1998).  Records prepared as part of the ordinary course of business and that would not "vary regardless of whether litigation was expected" or ongoing

7

are not entitled to work-product protection.  *Schaeffler v. United States*, 806 F.3d 34, 43-44 (2d

Cir. 2015).  Even in-house counsel communications related to business decisions do not qualify

for the protection unless they are specifically created *because of* litigation.  *See Gucci Am., Inc.*

*v. Guess?, Inc.*, 271 F.R.D. 58, 75 (S.D.N.Y. 2010) (internal communications involving an in-

house counsel regarding a cease-and-desist letter were not protected because they did not arise in

anticipation of litigation).  As with the attorney-client privilege, the party asserting the work-

product privilege "bears the heavy burden of establishing its applicability."  *In re Grand Jury*

*Subpoena Dated July 6, 2005*, 510 F.3d at 183.  Once a party establishes that a document

constitutes fact work product, it may still be discoverable upon a showing of "substantial need,"

and in the case of opinion work product, a "highly persuasive showing" of need.  *In re Grand*

*Jury Proceedings*, 219 F.3d 175, 190-91 (2d Cir. 2000).

        Both the attorney-client and work-product privileges may be waived if a party puts the

privileged communication at issue by relying on it to support a claim or defense.  Such a waiver

"may be implied in circumstances where it is called for in the interests of fairness," *In re Sims*,

534 F.3d 117, 132 (2d Cir. 2008), such as when a "'party attempts to use the privilege both as a

shield and a sword,'" *id.* (quoting *In re Grand Jury Proceedings*, 219 F.3d at 182)*; see also*

*Shinnecock Indian Nation v. Kempthorne*, 652 F. Supp. 2d 345, 365 (E.D.N.Y. 2009) (listing

cases).  "In other words a party cannot partially disclose privileged communications or

affirmatively rely on privileged communications to support its claim or defense and then shield

the underlying communications from scrutiny by the opposing party."  *In re Grand Jury*

*Proceedings*, 219 F.3d at 182; *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991)

("A defendant may not use the privilege to prejudice his opponent's case or to disclose some

selected communications for self-serving purposes.").  Underlying the waiver rationale is the

idea that a party may not simply fall back on privilege only when it is convenient.  *See Nobles*,

422 U.S. at 239-40 ("Respondent can no more advance the work product doctrine to sustain a

unilateral testimonial use of work-product materials than he could elect to testify in his own

behalf and thereafter assert his Fifth Amendment privilege to resist cross-examination . . . .").

## II.  The Government is Entitled to Discovery from Mr. Sieratzki

The Government seeks discovery from Mr. Sieratzki as to Defendant's responses to

Complainant's 2015 and 2017 reasonable accommodation requests, including the motivations

behind those responses.  Specifically, the Government seeks a deposition of Mr. Sieratzki and

the production of all documents related to Mr. Sieratzki's review of and response to the

reasonable accommodation requests, including any draft responses in his possession.  In response

to the Government's pre-motion letter, Defendant appeared to assert that both attorney-client

privilege and work product protections applied to the discovery sought by the Government.

(Dkt. No. 39.)  As set forth below, however, the Government is entitled to this discovery because

Defendant has waived any attorney-client privilege and work product protection that may apply

as to its responses to Complainant's 2015 and 2017 reasonable accommodation requests.

### A.  The Discovery Sought By the Government Is Not Protected by Attorney-Client Privilege

Documents concerning Mr. Sieratzki's review and responses to the reasonable

accommodation requests, and his testimony concerning his review and responses, are not

protected by attorney-client privilege because, even if such information was protected by the

privilege,[2] Defendant has waived any such privilege.  "Courts have found waiver [of the privilege] by implication when a client testifies concerning portions of the attorney-client communication"; "when a client places the attorney-client relationship directly at issue"; and "when a client asserts reliance on an attorney's advice as an element of a claim or defense[.]" *Cty. of Erie*, 546 F.3d at 228 (internal quotation marks omitted).  "The key to a finding of implied waiver in the third instance is some showing by the party arguing for a waiver that the opposing party *relies* on the privileged communication as a claim or defense or as an element of a claim or defense."  *Id.* (emphasis in original).  The "assertion of an 'advice-of-counsel' defense has been properly described as a 'quintessential example' of an implied waiver of the privilege." *Id.* (quoting *In re Kidder Peabody Secs. Litig.*, 168 F.R.D. 459, 470 (S.D.N.Y. 1996)).

---

[2] To date, Defendant has not met its burden to establish that any responsive information is protected by attorney-client privilege.  That privilege "protects only communications and not information: the privilege does not impede disclosure of information except to the extent that that disclosure would reveal confidential communications."  *In re General Motors LLC Ignition Switch Litig.*, 80 F. Supp. 3d 521, 528-29 (S.D.N.Y. 2015) (internal quotation marks omitted). This allows discovery of underlying information, even if communications themselves are shielded.  *In re Six Grand Jury Witnesses*, 979 F.2d 939, 944 (2d Cir. 1992) (privilege does not protect "the underlying information contained in the communication").  Here, counsel prevented Mr. Ernstoff from testifying about whether he "specifically identif[ied]" to Mr. Sieratzki what information he needed "in order to respond to the [June 2015] reasonable accommodation request" on attorney-client privilege grounds.  (Tr. at 105.)  However, when asked whether one of the specific demands in the response letter would address Mr. Ernstoff's questions about Complainant's disability—a question that did not touch on attorney-client communications—Mr. Ernstoff testified, "Since the letter was written and the request was made by my attorney, you would have to ask my attorney."  (Tr. at 104-05.)  That latter response suggests that Mr. Ernstoff did not have substantive communications with his attorney about the specific demands in the letter responses.

Moreover, to date, the Government has still not received a privilege log from Defendant identifying documents withheld in full from the Government in response to its discovery requests.  As such, the Government is not sure at this time whether any written communications between Defendant and its counsel have been withheld in full.

10

Here, the Government asserts that Defendant violated the FHA by constructively denying Complainant's 2015 and 2017 reasonable accommodation requests under Section 3604(f)(3)(B) through its onerous and burdensome responses.  To defend against this claim, Defendant must argue, *inter alia*, that its June 2015 and June 2017 responses were not onerous and unnecessary, and thus did not constitute a constructive denial.  Defendant has repeatedly demonstrated that it intends to assert such a defense.

For example, in its answer, Defendant claimed that it was "not unreasonable" for Defendant to have made the demands for "documents and information, including, but not limited to Complainant's medical records" in response to each of the reasonable accommodation requests.  (Answer to Amended Complaint, Dkt. No. 35, ¶¶ 56-57.)  And in Defendant's December 18, 2017 response to the Government's letter motion, Defendant disputed the Government's claim that Defendant's responses to Complainant contained a litany of burdensome demands, argued that the responses each "expressly sought to coordinate the additional information being requested from Reich with the information Defendant previously obtained through" litigation brought by the New York Division of Human Rights, and claimed that "nothing in [Defendant's responses] can be reasonably interpreted as requiring Reich to furnish Defendant with copies of medical records already in Defendant's possession."  (Dkt. No. 39 at 2.)

These claims by Defendant as to the nature, purpose, and reasonableness of the responses are not claims that Mr. Ernstoff has knowledge of, or could testify to, at trial.  Indeed, Mr. Ernstoff expressly testified that the Government "would have to ask [his] attorney" why the June 2015 response contained a request for Complainant's therapist session notes, as "the letter was written and the request was made by [his] attorney."  (Tr. at 105.)  He also testified that he

11

"relied on the attorney" to ask for the information "which would be required to make a decision on . . . whether the [reasonable accommodation] request is valid." (*Id.* at 121.) This testimony makes clear that counsel was responsible for crafting the litany of requests that the Government alleges were an improper denial of reasonable accommodation. This was not, as Defendant asserts, a case of the attorney "implementing" his client's directive by drafting correspondence that "articulated his client's position" (Dkt. No. 39 at 5); this was the attorney acting as an agent of Defendant and wholly determining how to respond to the reasonable accommodation request. Therefore, Defendant must rely on Mr. Sieratzki's knowledge concerning his review and crafting of its responses as an element of its defenses, and the Government is thus entitled to examine the reason underlying Defendant's responses—knowledge only Mr. Sieratzki possesses. Defendant has thus waived any applicable privilege "by implication." *Cty. of Erie*, 546 F.3d at 228; *see also Conte v. Cty. of Nassau*, No. 06 Civ. 4746, 2009 WL 1362784, at *3 (E.D.N.Y. May 15, 2009) (where defendants claimed that they were acting without malice and with reasonable and proper cause, documents relevant to such assertions were placed at issue and were subject to discovery despite assertions of privilege).

The circumstances here are analogous to the circumstances in *United States v. The Condominium Board of the Kips Bay Towers Condominium, Inc.*, 17 Civ. 361 (DLC), a litigation alleging violations of the FHA by a condominium board in connection with its no-pets policy and denials of reasonable accommodation requests.[3] In that case, the Court determined that the board "relied entirely" on its counsel's "analysis, judgment, decisions, and advice in responding

---

[3] A copy of Judge Cote's October 13, 2017 Order in *Kips Bay* ("Kips Bay Order") is attached as Exhibit G to the Mohan Declaration.

to tenants' accommodation requests" and thus the defendant would "have to rely on information within the firm's possession in order to defend against the Government's claims." (Kips Bay Order at 3.) Accordingly, Defendant had waived privilege and discovery from counsel was proper.

Here, as in *Kips Bay*, Ernstoff relied entirely on Mr. Sieratzki's "analysis, judgment, decisions, and advice" in responding to Complainant's reasonable accommodation requests. (Kips Bay Order at 2-3.) Contrary to Defendant's argument, the testimony cited above shows that Mr. Sieratzki did not "merely implement[ ]" Defendant's decision-making authority (Dkt. No. 39 at 3). Mr. Sieratzki was not merely a scribe; he received the accommodation requests, reviewed them, and determined precisely how to respond to them, in a way that the Government argues amounts to a constructive denial of the requests.

Mr. Sieratzki's role in the conduct at issue is particularly stark in connection with Complainant's June 2017 request. By the time of that request, this action was already pending, and Defendant's counsel had already received hundreds of pages of medical records through discovery in this case, including medical records from Complainant's current doctor, Shuchita Sharma, through May 8 and session notes from Complainant's therapist, Jerry Katz, through May 25, 2017.[4] Yet, counsel's June 19 response demanded that Complainant provide Sieratzki with the following within ten days: (1) "Copies of Gregory Reich's medical records and medical history, including but not limited to medical management provided, tests conducted with their

---

[4] While Defendant claimed to have "just served subpoenas" upon Reich's medical providers at that time (Dkt. No. 39 at 5), the Government had also served subpoenas on Reich's medical providers and provided Defendant with hundreds of pages of medical records from its administrative file as well as from third parties prior to Defendant's June 19, 2017 response.

13

results, glomerular filtration rate, MRI, CT scan, ultrasound or contrast x-ray, for the period of

time Dara Huang MD, Shuchita Sharma, MD, and Kidney & Hypertension Specialists of New

York, P.C. have been seeing/treating Reich," (2) "medical records relating to the claimed

ongoing and continuing medical problems regarding his ability to receive dialysis," and (3) the

"exact breed of the dog" that Complainant wished to adopt.  Defendant also reserved its right to

"supplement" its letter response once it received and reviewed the information sought, and

indicated further that it "may supplement this letter" upon review of the requested materials and

information produced as part of discovery in this action.  (Mohan Decl. Ex. C.)

 The Government has alleged and intends to argue at trial that the June 2017 response

constitutes a constructive denial, including because it demanded within ten days records that

were already in the possession of counsel for Defendant.  *See Logan v. Matveevskii*, 57 F. Supp.

3d 234, 257 (S.D.N.Y. 2014) (assessing defendant's "unreasonableness, unwillingness to grant

the requested accommodation, or bad faith" in determining whether defendant's delay in

responding to a reasonable accommodation request amounted to a constructive denial).  Mr.

Ernstoff, however, had no idea that any medical records had been produced as part of this

litigation, much less the specific ones that were requested by the letter response.  (*See* Tr. at 120

(Mr. Sieratzki objecting to a question because "[Ernstoff] didn't get medical records, I did."); *id.*

at 124 (Mr. Ernstoff stating that he was not aware that medical records had been produced in this

litigation).).  Thus, only Mr. Sieratzki could rebut the Government's assertion that the June 2017

response was a mere copy-and-paste of a prior response that achieved the purpose of effectively

denying the request, rather than being calculated to obtain information that Defendant felt it

needed to review the request and would give actual consideration to.  That is, only counsel, if

14

anyone, can rebut the Government's assertion of unreasonableness and bad faith.  The
Government is entitled to discovery of how, exactly, counsel can rebut that assertion.

The deposition excerpts cited by Defendant in its December 18, 2017 letter response to
the Government, when placed in context, only support the Government's position that Defendant
must rely on information in Mr. Sieratzki's possession for its defense.  For example, Defendant
cites Mr. Ernstoff's testimony that, in 2015, he needed "a full explanation of end-stage renal
disease, how it differs from [Reich's] prior . . . medical condition."  (Dkt. No. 39 at 2-3 (citing
Ernstoff Tr. at 114-15).).  Yet, Ernstoff testified that he did not learn what end-stage renal
disease was until the day before his deposition, when Sieratzki explained to him "the different
stages of kidney disease."  (Tr. at 115-16.)  Defendant then cited Ernstoff's testimony that he
believed he needed, in responding to Complainant's 2015 request, "[e]verything that we've
requested in the letter and probably subsequent information."  (Dkt. No. 39 at 4.)  But Mr.
Ernstoff did not recall reviewing Defendant's letter response, and when asked why specific
demands were included in that letter response, Mr. Ernstoff testified, "[s]ince the letter was
written and the request was made by my attorney, you would have to ask my attorney."  (Tr. at
104-05.)

Finally, Defendant cites to an excerpt of the deposition discussing Ernstoff's review of
the June 2017 request.  (Dkt. No 39 at 4 (citing Tr. at 118:20-25; 119:9-14).)  But Mr. Ernstoff
testified that he relied on his attorney "to put in the detailed information [that] would be required
to make a decision on . . . whether the request is valid."  (Tr. at 121:15-20.)  As stated above, it
is only Mr. Sieratzki who can testify about why particular demands for information were
included, particularly when he had much of that information in hand through this litigation
already.

15

Moreover, in addition to its defense that the June 2015 and June 2017 responses do not constitute a constructive denial, Defendant must also rely on Mr. Sieratzki's testimony to defend against the Government's claim that Defendant discriminated against Complainant on the basis of disability, *Mazzocchi v. Windsor Owners Corp.*, 204 F. Supp. 3d 583, 615 (S.D.N.Y. 2016), and its claim for punitive damages based on Defendant's wanton and willful conduct, *MHANY Mgmt. Inc. v. Cty. of Nassau*, 819 F.3d 581, 613 (2d Cir. 2016). For these claims, the intent of the individual taking the adverse actions at issue—the constructive denials—is crucial both to the Government's claim and Defendant's defense. Here, Mr. Siertazki, as discussed above, was the primary decisionmaker. His intent, therefore, is squarely at issue. *See In re Namenda Direct Purchaser Antitrust Litig.*, No. 15 Civ. 7488(CM) (JCF), 2017 WL 3314233, at *3 (S.D.N.Y. Aug. 2, 2017) ("[E]ven subjective beliefs that plausibly implicate only business decisions and could have been theoretically reached without attorney-client input may require access to attorney communications or attorney-created information, because in order to test the veracity of the defendants' asserted subjective beliefs, other justifications that plaintiffs have shown relied on attorney-client advice are also directly implicated." (internal quotation marks omitted).)

**B.  The Discovery Sought By the Government Is Not Protected Work Product**

Defendant additionally appears to assert that the discovery sought by the Government constitutes protected work product. As an initial matter, it is unclear how the discovery sought encompasses information created "in anticipation of litigation," rather than information related to day-to-day responsibilities of a landlord outside the context of a litigation. *See Adlman*, 134 F.3d at 1202 (documents are work product where they are "fairly said to be have been prepared or obtained because of the prospect of litigation" (internal quotation marks omitted)). Indeed, any documents or information created in connection with the responses would have been created

16

regardless of any pending or anticipated litigation, as part of the ordinary course of Defendant responding to a tenant's request, and are therefore not work product. *Id.*; *Chen-Oster v. Goldman, Sachs & Co.*, 293 F.R.D. 547, 552-53 (S.D.N.Y. 2013) ("If, regardless of the prospect of litigation, the document would have been prepared anyway, in the ordinary course of business . . . , it is not entitled to work product protection." (internal quotation marks omitted)); *see* Tr. at 107 (Mr. Ernstoff testifying that he did not send another tenant's request to keep a cat to his attorney but instead handled it "orally"). And that Mr. Sieratzki prepared such documents or information does not imbue them with work product protection. *Wultz v. Bank of China Ltd.*, 304 F.R.D. 384, 393-94 (S.D.N.Y. 2015) (citations omitted) ("[T]he doctrine is not satisfied merely by a showing that the material was prepared at the behest of lawyer or was provided to a lawyer. Rather, the materials must result from the conduct of investigative or analytical tasks to aid counsel in preparing for litigation." (internal quotation marks omitted)). Similarly, while the protection can extend to "intangible work product"—analysis by an attorney that "has not been memorialized" in writing—such analysis too must have been "made in anticipation of litigation." *Foster v. City of New York*, No. 14 Civ. 4142 (PGG)(JCF), 2016 WL 524639, at *3 (S.D.N.Y. Feb. 5, 2016) (internal quotation marks omitted).

Moreover, even if the discovery sought by the Government constituted protected work product, such protection was waived by Defendant for the same reason that any attorney-client privilege was waived: because the underlying information was put at issue by Defendant. *Granite Partners v. Bear, Stearns & Co., Inc.*, 184 F.R.D. 49, 54 (S.D.N.Y. 1999) (work product protection waived when a party puts otherwise protected work product "at issue"); *see also John Doe Co. v. United States*, 350 F.3d 299, 302 (2d Cir. 2003) (noting that party waives both attorney-client and work product protection by placing substance of protected documents at

17

issue);(*See* Kips Bay Order at 3 ("The defendant also waived attorney work product protection when members of the Board revealed during their depositions that they relied on the written advice of counsel to make decisions with respect to the no-pets policy.")). "A person may waive protection where he 'asserts a factual claim the truth of which can only be assessed by examination of a privileged communication,' even if he does not explicitly rely on that communication." *Foster*, 2016 WL 524639, at *3 (citation omitted).

And, in this case, "fairness requires disclosure" of the information sought by the Government. *In re Grand Jury Proceedings*, 219 F.3d at 183 (2d Cir. 2000). As explained above, fairness demands discovery as to counsel's participation in responding to Complainant's reasonable accommodation request. While Mr. Ernstoff testified as to his review and general discussions with counsel concerning Complainant's requests, the specific demands in the responses were included by Mr. Sieratzki, and only he can testify about why those specific demands were made.

## III.  The Government Is Entitled to Depose Opposing Counsel

Finally, the mere fact that Mr. Sieratzki is counsel for Defendant does not preclude his deposition. Parties generally have wide latitude to depose any person on any relevant matter. Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense"). The Second Circuit has articulated a "flexible approach" to attorney depositions, one in which courts weigh "all of the relevant facts and circumstances" including the "need to depose the lawyer, the lawyer's role in connection with the matter," as well as the "risk of encountering privilege and work-product issues, and the extent of discovery already conducted." *In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 72 (2d Cir. 2003); *see also In re Chevron Corp.*, 749 F. Supp. 2d 141, 163-168 (S.D.N.Y.

18

2010) (permitting the deposition of an attorney in possession of first-hand evidence due to his "central role" in the case, the strong need for his testimony, and despite the potential for encountering privilege issues); *Nimkoff Rosenfeld & Schecter, LLP v. RKO Properties, Ltd.*, No. 07 Civ. 7983 (DAB) (HBP), 2016 WL 3042733, at \*9 (S.D.N.Y. May 24, 2016) (rejecting stringent requirements for parties seeking to depose counsel).

Under the circumstances of this case, the Government is entitled to testimony from Mr. Sieratzki.  For the reasons discussed above, the Government needs to depose Mr. Sieratzki to fully discover how Defendant intends to defend against the Government's claims that its responses were constructive denials and amounted to discrimination.  *See Matveevskii*, 57 F. Supp. 3d at 257; *see also Cty. of Nassau*, 819 F.3d at 613 (noting that impermissible motivations can constitute a violation of 3604(f)(2)).  The parties have reached the end of fact discovery, and the evidence has shown that Mr. Sieratzki was deeply involved in those responses, crafting the specifics of those responses without concurrent knowledge of those specifics by Defendant's principal.  Mr. Ernstoff testified that his attorney handled the details of the letter, meaning that Mr. Sieratzki must testify to the circumstances and intent underlying the specifics of the accommodation denial in order to rebut the Government's claims.  Finally, for the reasons stated previously, a deposition of Mr. Sieratzki would not run afoul of attorney-client or work-product privileges.  Moreover, while Mr. Sieratzki is representing Defendant in this case, Defendant is also represented by two other law firms.  Given his unique role in the facts underlying this case, the Government should be able to depose Mr. Sieratzki, and he should not be able to insulate himself from discovery due to his role as counsel for Defendant in this case.  *See Alcon Labs, Inc. v. Pharmacia Corp.*, 225 F. Supp. 2d 340, 344 (S.D.N.Y. 2002) ("Columbia's choice of

White as trial counsel, with the knowledge that he was the lead prosecuting attorney for the patent, cannot shield his deposition").

## CONCLUSION

For these reasons, the Government respectfully requests that the Court grant its motion to compel discovery and direct Mr. Sieratzki to (a) produce the documents requested in the Government's document subpoena (Mohan Decl. Ex. E) and (b) appear for a deposition in this matter.

Dated: New York, New York
       June 25, 2018

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York

By: */s/ Sharanya Mohan*    
SHARANYA MOHAN
LAUREN LIVELY
Assistant United States Attorneys
86 Chambers Street, Third Floor
New York, NY 10007
Tel.: (212) 637-2737
Fax: (212) 637-2786
sharanya.mohan@usdoj.gov
lauren.lively@usdoj.gov
