UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

UNITED STATES OF AMERICA,

                                  Plaintiff,

                 -against-

111 EAST 88TH PARTNERS,

                                Defendant.

-----------------------------------------------------------------X

**OPINION AND ORDER**

**16-CV-9446 (PGG) (KHP)**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 09/20/2018

**KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE**

      This case arises out of an apartment building's no-dog rule. Gregory Reich ("Complainant" or "Mr. Reich") is a tenant in a rent-controlled apartment located at 111 East 88th Street in New York City. (Doc. No. 31, Amended Complaint ("Am. Compl.") ¶ 17.) He has end-stage renal disease and depression and, in connection therewith, twice requested permission to keep an emotional support dog in his home. (*Id.* ¶¶ 15, 27-28.) The first request was made in June 2015. The second request was made in June 2017 for a second dog after his first dog passed away. (*Id.* ¶¶ 26-28, 33-34.) Complainant provided medical support for both requests. For example, in connection with his 2017 request, he provided a letter from his doctor, which confirmed that he received hemodialysis at home five times a week for his end-stage renal disease, and a letter from his therapist, noting that refusing the request for an emotional support dog would "be a serious threat to his health and his life." (*Id.* ¶ 34.)

      To assess the accommodation requests, Defendant asked Mr. Reich to provide supplemental medical records and history, including but not limited to medical management

1

provided, tests conducted with their results, glomerular filtration rate, MRI, CT scan, ultrasound or contrast x-rays, and mental health therapist session notes. (*Id.* ¶¶ 29, 35.) It also reserved the right to require Mr. Reich to be examined by a doctor identified by Defendant and to have Mr. Reich's doctors and mental health provider submit to a deposition. (*Id.* ¶ 30.) Deeming Defendant's requests to be unduly burdensome and unreasonable given the Fair Housing Act's ("FHA") rule regarding reasonable accommodation, *see* 42 U.S.C. §§ 3601 *et seq.*, Mr. Reich complained to the U.S. Department of Housing and Urban Development ("HUD"). (Am. Compl. ¶¶ 11, 31, 37, 39.) Additionally, he elected to keep an emotional support dog in his apartment based on alleged emotional support needs. After evaluating Mr. Reich's complaint, HUD determined that Defendant had constructively denied Mr. Reich's requests for reasonable accommodation in violation of the FHA, and elected to pursue this litigation. (*Id.* ¶¶ 11, 31.) In addition to charging Defendant with failing to provide a reasonable accommodation (*i.e.*, permission to keep the emotional support animal), Plaintiff also asserts claims of intentional discrimination on the basis of Mr. Reich's disability and unlawful interference with Mr. Reich's rights under the FHA and/or retaliation for having exercised his rights under the FHA. Concurrently with this lawsuit, Defendant has pursued eviction proceedings against Mr. Reich for violating the building's no-dog rule.[1] (*Id.* ¶ 25.)

Presently before the Court is the Government's motion to compel Defendant's attorney, Steven Sieratzki, to produce relevant documents and appear for a deposition (Doc. No. 62) and Defendant's cross-motion for a protective order precluding the deposition (Doc. No. 65).

---

[1] Defendant's decision to pursue eviction proceedings supports Plaintiff's position that the requests for accommodation were denied.

2

Rather than draft a letter for his client's representative Robert Ernstoff's signature, Mr. Sieratzki penned and sent the letter to Mr. Reich that demanded detailed medical records and information for purposes of evaluating the requests for accommodation.  (*See id*. ¶ 35; Doc. No. 64, Declaration of Sharanya Mohan ("Mohan Decl."), Ex. C.)  Additionally, in its discovery responses in this case, Defendant identified Messrs. Sieratzki and Ernstoff as the two people who received and/or participated in reviewing and responding to Mr. Reich's two reasonable accommodation requests.  Mr. Ernstoff testified that, in connection with evaluating the requests for reasonable accommodation, he did not review underlying medical information provided by Mr. Reich and that Mr. Sieratzki had drafted the letters requesting additional medical information and could provide the reason behind the demands in the letters.  (Mohan Decl., Ex. A, Transcript of the Deposition of Robert Ernstoff ("Tr.") at 92-95, 105.)

Defendant objects to the deposition of its attorney on the grounds that its attorney's responses are protected by the attorney-client privilege and/or attorney work product doctrine.  Plaintiff contends that there is no privilege that attaches to the information sought and/or that any privilege has been waived by virtue of the fact that Defendant relied on its counsel to make decisions about how best to respond to Plaintiff's request for accommodation.

## **LEGAL STANDARD**

The attorney-client privilege protects communications between a client and its attorney for the purpose of obtaining or providing legal assistance and advice, provided those communications were intended to be and were kept confidential.  *Brennan Ctr. for Justice at N.Y. Univ. Sch. of Law v. U.S. Dep't of Justice*, 697 F.3d 184, 207 (2d Cir. 2012).  Privilege is

narrowly construed because it renders relevant information undiscoverable. *Fisher v. United States*, 425 U.S. 391, 403 (1976); *see also In re Cty. of Erie*, 473 F.3d 413, 418 (2d Cir. 2007).

Work product protection shields from discovery "documents and tangible things that are prepared in anticipation of litigation or for trial." Fed. R. Civ. P. 26(b)(3). The protection "shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *United States v. Nobles*, 422 U.S. 225, 238 (1975). An attorney's mental impressions, legal theories, and fact work product are protected under this doctrine. *See In re Grand Jury Subpoena Dated July 6, 2005*, 510 F.3d 180, 183 (2d Cir. 2007). By contrast, records prepared in the ordinary course of business that would not "vary regardless of whether litigation was expected" or ongoing are not protected from disclosure. *Schaeffler v. United States*, 806 F.3d 34, 43-44 (2d Cir. 2015). When an attorney is given *de facto* decision-making power by a business, no privilege attaches to information and communications concerning those business decisions. *See, e.g., United States v. The Condominium Board of the Kips Bay Towers Condominium, Inc.*, No. 17-cv-361 (DLC), Oct. 13, 2017 Order ("Kips Bay Order"); *Gucci Am., Inc. v. Guess?, Inc.*, 271 F.R.D. 58, 75 (S.D.N.Y. 2010).

The burden is on the party resisting discovery to establish privilege. *United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011); *In re Grand Jury Subpoena Dated July 6, 2005*, 510 F.3d at 183. Additionally, a party cannot resist disclosure if it relies on privileged communications in support of a claim or defense. Reliance on advice of counsel as a defense constitutes a waiver of privilege with respect to the advice received. *In re Cty. of Erie*, 546 F.3d 222, 228 (2d Cir. 2008); *In re Sims*, 534 F.3d 117, 132 (2d Cir. 2008); *In re Grand Jury Proceedings*, 219 F.3d 175, 182-83 (2d Cir. 2000); *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991).

Pursuant to Fed. R. Civ. P. 26(c)(1), a court may issue a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Good cause for a protective order may be established where necessary to protect against the invasion of the attorney-client privilege. *See, e.g., Fuller v. Interview, Inc.*, No. 07-cv-5728 (RJS) (DF), 2009 WL 3241542, at *3-7 (S.D.N.Y. Sept. 30, 2009).

## **DISCUSSION**

In this case, Mr. Ernstoff did not provide the rationale for requesting the various medical information and records from Mr. Reich or explain why such additional information was needed to evaluate the reasonableness of Mr. Reich's request to keep his emotional support dog in his apartment. Rather, Mr. Ernstoff testified that "[s]ince the letter was written and the request was made by my attorney, you would have to ask my attorney." (Tr. at 104-05, 121; *see also* Reply Declaration of Sharanya Mohan, Ex. G, Additional Excerpts from the Transcript of the Deposition of Robert Ernstoff at 176.) The parties also dispute what medical information already was in Defendant's possession to evaluate the accommodation requests, and it appears, based upon Mr. Ernstoff's deposition testimony, that only Mr. Sieratzki can provide that information.

Defendant's explanation as to why it needed such extensive medical information to evaluate Mr. Reich's accommodation requests goes to the heart of its defense that it did not constructively or unreasonably deny Mr. Reich permission to keep his emotional support dog in violation of the FHA or otherwise unlawfully discriminate or interfere with Mr. Reich's rights under the FHA. Mr. Ernstoff's testimony makes clear that, although he reviewed and approved the requests for information, he relied on Mr. Sieratzki to determine and describe the scope of

5

the medical information needed to respond to Mr. Reich's reasonable accommodation request, rendering Mr. Sieratzki a co-decisionmaker with Mr. Ernstoff. Defendant has thus waived any applicable privilege with respect to certain information related to the responses to Mr. Reich's accommodation requests. *See In re Cty. of Erie*, 546 F.3d at 228; *see also Conte v. Cty. of Nassau*, No. 06-cv-4746 (JFB) (ETB), Kips Bay Order; 2009 WL 1362784, at *3 (E.D.N.Y. May 15, 2009).

The work product doctrine also does not apply to protect from disclosure the reasons for the requests made to Mr. Reich because Defendant had to respond to Mr. Reich's requests for reasonable accommodation regardless of any litigation. *See Schaeffler*, 806 F.3d at 43-44; *United States v. Adlman*, 134 F.3d 1194, 1202 (2d Cir. 1998).

The Court is mindful of the presumption disfavoring attorney depositions and the complexities that arise from questioning defense counsel. *See Edebali v. Bankers Standard Ins. Co.*, No. 14-cv-7095 (JS) (AKT), 2017 WL 3037408, at *9 (E.D.N.Y. July 17, 2017); *Shaub & Williams, LLP v. Augme Technologies, Inc.*, No. 13-cv-1101 (GBD) (JCF), 2014 WL 1033862, at *5 (S.D.N.Y. Mar. 17, 2014). For this reason, the Government's deposition of Mr. Sieratzki will be limited to questions concerning: (1) medical information about Mr. Reich known by Mr. Sieratzki (and thus constructively by Defendant) at the time of the writing of the two letters requesting additional medical information; (2) identification of medical documents that had been conveyed to Mr. Ernstoff prior to finalizing each of the letters; (3) the specific questions Defendant had after its review of medical information already in its possession that, if answered, would allow it to determine whether Mr. Reich had a physical or mental impairment which substantially limited one or more major life activities; (4) why Defendant believed its

letters to Mr. Reich were tailored to ascertain his medical or emotional symptoms alleviated by keeping his dog and/or the assistance provided by the dog (and/or what about the medical information already in Defendant's possession did not allow it to ascertain Reich's symptoms that were alleviated by keeping his dog); and (5) whether Defendant would concede that any of the information requested was extraneous to confirming that Mr. Reich had a disability at the time of the accommodation requests and that his dog provided some type of disability-related assistance or emotional support.  The Government may not inquire as to Defendant's legal strategy, communications about legal strategy behind the two letters, or details about the communications between Mr. Ernstoff and Mr. Sieratzki concerning any prior drafts of the letters, applicable legal standards under the FHA and state law, or how the two letters would satisfy legal standards.  The deposition shall seek factual information and final rationales/decisions of Defendant only.

## CONCLUSION

For the reasons set forth above, the Government's motion to compel discovery (Doc. No. 62) is **GRANTED** subject to the limitations set forth herein.  Defendant's cross-motion for a protective order (Doc. No. 68) is **DENIED**.  Because of the limited nature of the information that the Government may seek through the deposition, the deposition shall be limited to three hours.  The deposition shall take place before October 5, 2018.  To the extent Defendant believes any particular communication retains a privilege despite this ruling, Defendant shall confer with and provide a privilege log to the Government.  To the extent Defendant has not provided a privilege log to the Government with respect to its review and production of

7

documents in this case, it is directed to produce a privilege log by no later than September 28, 2018.

Finally, the parties raised arguments about the validity and viability of the Government's request for punitive damages. These arguments are premature and inappropriate in a discovery motion. Accordingly, the Court does not address them.

**SO ORDERED.**

Dated: September 20, 2018
    New York, New York

_____
KATHARINE H. PARKER
United States Magistrate Judge