UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | 16 Civ. 9446 (PGG) (KHP) |
| v. | CONSENT DECREE |
| 111 EAST 88TH PARTNERS, | |
| Defendant. | |

## INTRODUCTION

**A.      Background**

This Consent Decree is entered into between the United States of America (the "United States") and Defendant 111 East 88th Partners ("Defendant" or "111 Partners").

WHEREAS, the United States brought this action (the "Action") to enforce provisions of the Fair Housing Act ("FHA"), codified at 42 U.S.C. §§ 3601–3619.  Specifically, the United States' amended complaint in this Action, filed on September 19, 2017, alleges that Defendant violated the FHA by twice denying a reasonable accommodation to a disabled tenant, Gregory Reich ("Complainant"), and interfering with Complainant's exercise of his rights under the FHA. Specifically, the United States contends that Defendant constructively denied Complainant's accommodation requests to keep an emotional support dog in his apartment by requiring the onerous disclosure of detailed medical records and other information, and thereby discriminated against Complainant on the basis of his disability;

**B.      111 East 88th Partners**

WHEREAS, 111 East 88th Street, New York, New York (the "Building"), is a 10-story residential building with 61 apartment units that converted to condominiums in 1987 pursuant to

Article 9-B of the New York Real Property Law.  111 Partners is the owner and landlord of the

apartment (the "Apartment") that Complainant occupies in the Building, as a tenant pursuant to

the terms and conditions of a lease agreement dated August 9, 1960 (the "Lease").  The Lease

prohibits Complainant from keeping a dog in the Apartment without the express written

permission of 111 Partners;

**C.     Prior Proceedings**

WHEREAS, in 2006, Complainant requested that Defendant grant him a reasonable

accommodation to the Lease's "no pets" provision to allow him to keep an emotional support

dog in his Apartment.  Defendant requested that Complainant provide additional information to

substantiate his request.  Complainant, in turn, alleged that Defendant had constructively denied

his accommodation request and filed a complaint with the U.S. Department of Housing and

Urban Development ("HUD").  HUD referred the complaint to the New York State Division of

Human Rights ("NYSDHR") for investigation.  Defendant filed a summary holdover proceeding

against Complainant in New York City Civil Court, Housing Part, Index No. 98118/06 (the

"2006 Holdover Proceeding").  After NYSDHR issued a probable cause determination in March

2007, Defendant elected to have the matter adjudicated in state court.  Accordingly, NYSDHR

commenced litigation against Defendant in the New York State Supreme Court, New York

County, in or about May 2007 (the "NYSDHR Action");

WHEREAS, during the pendency of the NYSDHR Action, the 2006 Holdover

Proceeding was stayed by order of the Civil Court;

WHEREAS, by Decision and Order entered on September 8, 2014, the court in the

NYSDHR Action granted Defendant's motion *in limine* and precluded Complainant from

offering testimony or evidence at trial that he should be permitted to keep an emotional support

dog in the Apartment as a reasonable accommodation.  By Order entered on October 29, 2014, the NYSDHR Action was dismissed on the merits;

WHEREAS, by Notice of Motion dated November 17, 2014, Defendant moved in the 2006 Holdover Proceeding to vacate the stay previously granted and restore the proceeding to the court's calendar.  By Stipulation dated December 8, 2014, the motion was granted;

WHEREAS, on or about November 25, 2014, Complainant filed another FHA complaint with HUD (the "2014 HUD Complaint") alleging that Defendant had wrongfully refused his reasonable accommodation request to keep an emotional support dog in his Apartment;

WHEREAS, by letter dated March 5, 2015, HUD acknowledged receipt of the 2014 HUD Complaint and advised Complainant that under the principle of *res judicata*, his claims could not be reconsidered by HUD.  No further action was taken by HUD with respect to the 2014 HUD Complaint;

WHEREAS, in June 2015, Complainant was diagnosed with End Stage Renal Disease ("ESRD").  On June 18, 2015, Complainant, through his counsel, made another request for a reasonable accommodation to Defendant.  The accommodation request included a letter from Complainant's treating nephrologist explaining his ESRD diagnosis, and a letter from his therapist explaining the consequences of that diagnosis on Complainant's mental health and the resulting need for him to have his emotional support dog in the Apartment (the "June 2015 Request").  On June 28, 2015, Defendant responded to the accommodation request through its counsel, demanding that Complainant provide mental health and medical records, and reserving the right to have Complainant examined by a physician it had selected and require Complainant, his doctor, and his therapist to appear to answer questions under oath relating to Complainant's

disability and accommodation request.  Complainant deemed this response to constitute a constructive denial of his June 2015 Request;

WHEREAS, on or about July 27, 2015, Complainant filed another discrimination complaint with HUD alleging, among other things, that Defendant had discriminated against him by denying the June 2015 Request.  HUD investigated the complaint and found reasonable cause to conclude that Defendant had improperly denied the June 2015 Request.  Thereafter, Defendant elected to have HUD's charge of discrimination adjudicated in federal court, and this litigation followed by the filing of this Action;

WHEREAS, the 2006 Holdover Proceeding was stayed during the pendency of the Action;

WHEREAS, in April 2017, Complainant's dog passed away.  On June 7, 2017, Complainant, through counsel, made another request for a reasonable accommodation (the "June 2017 Request").  Complainant's June 2017 Request enclosed a letter from his treating nephrologist and therapist.  Defendant, through counsel, responded to Complainant's request by demanding medical and mental health documentation.  Complainant deemed this response to constitute a constructive denial of his June 2017 Request and in August 2017, adopted a dog, Chablis;

WHEREAS, by letter dated August 4, 2019, the Board of Managers ("BOM") of the Building, by its counsel, advised Defendant that an ongoing leak emanating from the Apartment had irreparably damaged walls and ceilings in the bathroom and bedroom of the apartment immediately below (the "BOM Demand Letter").  The BOM Demand Letter further advised Defendant that this water infiltration had been recurring for at least one year and constituted a nuisance and a default under the Condominium's By-Laws for the Building.  The BOM Demand

Letter demanded that Defendant commence the cure of the leak within five (5) days of Defendant's receipt of said letter;

WHEREAS, in response to the BOM Demand Letter, Defendant served Complainant with a "Notice to Cure," dated August 13, 2019 (the "August 13 Notice to Cure"), which stated, *inter alia*, that there was and continued to be a water leak from Complainant's bathroom into the apartment immediately below, and that the unsanitary condition of Complainant's bathroom was effectively preventing Defendant from undertaking the requisite work in the bathroom to identify and repair the source of the water leak;

WHEREAS, after the 15-day cure period set forth in the August 13 Notice to Cure had lapsed, Defendant served a notice of termination, dated September 30, 2019, and commenced a summary holdover proceeding against Complainant in the New York City Civil Court, Housing Part, Index No. 052950/20, in March 2020 (the "2020 Holdover Proceeding");

**D.   Consent of the Parties to Entry of this Decree**

WHEREAS, the parties agree that this Court has jurisdiction over the subject matter of this case pursuant to 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. § 3612(o).  The parties further agree that this controversy should be resolved without further proceedings and without an evidentiary hearing or a trial;

WHEREAS, Defendant agrees to adopt a reasonable accommodation policy and provide other relief as set forth herein; and

WHEREAS, the parties agree to the entry of this Consent Decree.

**It is hereby ORDERED, ADJUDGED, and DECREED:**

**I.   GENERAL INJUNCTION**

1.   Defendant and each of its officers, employees, agents, successors, and assigns, and all other persons in active concert or participation with it, are enjoined from discriminating

5

on the basis of disability as prohibited by the FHA.  Specifically, Defendant and each of its officers, employees, agents, successors, and assigns, and all other persons in active concert or participation with it, shall not:

    a.   discriminate in the sale or rental, or otherwise make unavailable or deny, a dwelling to any buyer or renter because of a disability of the buyer or renter, in violation of 42 U.S.C. § 3604(f)(1)(A);

    b.   discriminate in the terms, conditions, or privileges of the sale or rental of a dwelling, or in the provision of services or facilities in connection with such a dwelling, because of disability, in violation of 42 U.S.C. § 3604(f)(2);

    c.   fail or refuse to make reasonable accommodations in its rules, policies, practices, or services as landlord, when such accommodations may be necessary to afford persons with disabilities equal opportunity to use and enjoy a dwelling, as required by 42 U.S.C. § 3604(f)(3)(B);

    d.   coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of any person having exercised or enjoyed, or on account of any person having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by Section 3604 of the FHA, in violation of 42 U.S.C. § 3617.

## II.    ADOPTION OF REASONABLE ACCOMMODATION POLICY

2.    As soon as reasonably possible, but no later than thirty (30) days after the date this Consent Decree is executed by Defendant and the United States and entered by the Court (the "Effective Date"), Defendant shall adopt and implement the agreed upon process and procedures respecting its reasonable accommodation policy for receiving and handling requests

for reasonable accommodations made by individuals with disabilities, entitled "The Reasonable Accommodation Policy," as attached hereto in <u>Appendix A</u>.

3.       Defendant shall provide notice and documentation to the United States within thirty (30) days of adoption and implementation of The Reasonable Accommodation Policy.

4.       After adopting The Reasonable Accommodation Policy, Defendant shall not make any substantive revisions to the policy without prior approval from the United States.

### III.    COMPLAINANT'S REASONABLE ACCOMMODATION REQUEST GRANTED

5.       Complainant shall be permitted to keep his dog Chablis in his Apartment for as long as he resides therein, without the need to make any request or application to 111 Partners. Complainant shall be entitled to replace such dog with another emotional support dog in his Apartment, if Complainant so chooses, at any time during his residency at the Apartment without the need to make any request or application to 111 Partners.  Nothing in this paragraph shall be construed as entitling Complainant to keep more than one (1) emotional support dog in his Apartment without first making a request pursuant to The Reasonable Accommodation Policy for approval for same.

### IV.    SETTLEMENT PAYMENT AND OTHER CONSIDERATION

6.       Within ten (10) business days after the Effective Date, Defendant will discontinue the 2006 Holdover Proceeding.  Within ten (10) business days after the Substantial Completion Date (defined below in paragraph 9), Defendant will discontinue the 2020 Holdover Proceeding. Defendant shall promptly provide to the United States proof of filing the stipulations of discontinuance of the 2006 and 2020 Holdover Proceedings.  Defendant's discontinuance of the 2006 and 2020 Holdover Proceedings shall be with prejudice, and without costs, expenses, or

attorney's fees to either party.  For the avoidance of doubt, Defendant also waives and disclaims any right to fees and costs with respect to the NYSDHR Action.

7.     Within ten (10) business days after the Effective Date, pursuant to instructions to be provided to Complainant's counsel by counsel for Defendant, Complainant shall pay to Defendant the aggregate sum of FIFTY-ONE THOUSAND, SIXTY-EIGHT DOLLARS AND NINETY-ONE CENTS ($51,068.91), in full satisfaction of Complainant's back rent obligations to Defendant through and including June 30, 2020.

8.     By way of providing damages to Complainant, Defendant shall undertake the steps as outlined in this paragraph.  As soon as reasonably possible, but no later than thirty (30) calendar days after the Effective Date, Complainant and Defendant shall select dates and times when Defendant shall have access to the Apartment during which Defendant shall complete the following work in the bathroom at Defendant's sole cost and expense:

> a.   clean/repair or replace the bathtub, toilet, and sink with new standard fixtures, with Defendant retaining sole discretion to determine whether some or all of these fixtures will be cleaned/repaired or replaced;
>
> b.   replace the medicine cabinet with a new standard cabinet;
>
> c.   install a new standard tile floor;
>
> d.   replace the tiled portions of the walls with new standard tile;
>
> e.   install a new standard light fixture; and
>
> f.   repaint the bathroom.

As soon as reasonably practicable and mutually convenient, Complainant shall provide Defendant with access to the Apartment so that Defendant may take measurements in the bathroom and assess the condition on the existing fixtures and surfaces therein; any individual accessing the Apartment for the foregoing shall wear gloves and masks when inside the Apartment.  All of the foregoing work and repairs (the "Bathroom Work") shall be performed by

8

Defendant in a reasonably expeditious manner so as to mitigate any inconvenience to Complainant.

9.      Prior to the commencement of the Bathroom Work, at his own cost and expense, Complainant shall: (i) remove all personal property and toiletries from the bathroom, (ii) disconnect and remove any medical equipment or devices from the bathroom, and (iii) hire a cleaner to clean the bathroom immediately prior to the commencement of the Bathroom Work. After the Bathroom Work begins, Defendant shall provide Complainant and his husband with twenty-four-hour access to a vacant apartment in the Building (Unit 5C) for the sole purpose of providing access to a working bathroom. Complainant shall not move any furniture or personal property into the vacant apartment, and he shall not under any circumstances bring his dog into the vacant apartment. Unless otherwise agreed by Complainant and Defendant in writing, Complainant's access to the vacant apartment shall continue until such time as the toilet and shower in the Apartment are returned to operation. The work crew shall wear gloves and masks at all times when inside the Apartment. The work crew shall be required to comply with all applicable residential construction requirements in the New York City Building Code and any other applicable codes, regulations, or statutes. The work crew shall also be required to mitigate the emission of dust and debris caused by the Bathroom Work, including by using a plastic barrier to isolate the work area from other areas in the Apartment. Complainant acknowledges that notwithstanding such mitigation measures, the Bathroom Work may create dust in the Apartment and/or cause him some inconvenience. Simultaneously with the Bathroom Work, Defendant shall investigate and repair (including plaster and paint) any leak found in Complainant's bathroom. Defendant also shall have the right, but not the obligation, unless where otherwise required under the New York City Building Code, New York Real Property Law 235-B, or any other applicable rules or regulations, to repair any other defect or damage

that is found in the Apartment's bathroom at Defendant's sole cost and expense.  Defendant shall provide written notice to Complainant and the United States when the Bathroom Work is substantially completed (the "Substantial Completion Date"), which shall mean when the bathroom is ready for use.  The Bathroom Work is expected to take approximately two (2) weeks, but the actual duration of said work may vary based upon the time needed to identify and repair the leak, unknown conditions discovered after said work begins, access to the Building, and other factors not known at this time.  To the extent possible, Complainant and Defendant will attempt to coordinate the Bathroom Work so that it can be performed during a time when Complainant plans to be away from the Apartment.

10.     Notwithstanding the foregoing, in the event that Complainant does not timely make the rent arrearage payment required by Paragraph 7 of this Consent Degree, or if Complainant fails to provide Defendant with access to the Apartment to undertake the Bathroom Work within three (3) months from the Effective Date, then (i) Defendant's obligation to undertake the Bathroom Work shall be deemed waived and released, and (ii) Defendant shall not be obligated to discontinue the 2020 Holdover Proceeding.

11.     The temporary access that Complainant is being afforded to the vacant apartment pursuant to Paragraph 9 of this Consent Decree shall not create a tenancy, license, or other right of occupancy to the vacant apartment by Complainant and/or his husband.

12.     In the event that Defendant's access to the Building to perform the Bathroom Work is prohibited by the BOM and/or a public agency due to the COVID-19 health crisis, the time period set forth in Paragraph 10 for completing the Bathroom Work shall be stayed and/or extended, as necessary, *in pari passu.*

## V.    EDUCATIONAL PROGRAM

13.     No later than thirty (30) calendar days after the Effective Date, Defendant shall provide a copy of this Consent Decree to all management employees or agents, including counsel, who receive, process, review or make determinations with regard to any reasonable accommodation request or who are involved in or responsible for enforcing any of Defendant's rules or regulations.  Defendant shall secure a signed statement from each such agent or employee acknowledging that he or she has received the Consent Decree, and has had an opportunity to read the Consent Decree and to have questions about the Consent Decree answered.  This statement shall be substantially similar to the form of Appendix B, and copies thereof shall be furnished to the United States within sixty (60) days after the Effective Date.

14.     During the term of this Consent Decree, Defendant shall give each new management employee, no later than thirty (30) calendar days after the date he or she commences such agency or employment relationship with Defendant, a copy of this Consent Decree.  Defendant shall require each such new agent or employee to sign a statement acknowledging that he or she has received the Consent Decree, and has had an opportunity to read the Consent Decree and to have questions about the Consent Decree answered.  This statement shall be substantially similar to the form of Appendix B, and copies thereof shall be furnished to the United States on a biannual basis.

15.     In the event that Defendant hires or engages any new management employees or agents to receive, process, review or make determinations with regard to any reasonable accommodation, Defendant shall provide annual training for such new employees or agents with regard to its Reasonable Accommodation Policy.  Such annual trainings shall be conducted for the duration of this Consent Decree.

## VI.    NOTICE OF DEFENDANT'S REASONABLE ACCOMMODATION POLICY

16.     For the duration of this Consent Decree, within fourteen (14) calendar days of the anniversary of the Effective Date, Defendant shall advise the United States in writing of its compliance with paragraphs 14-15 of this Consent Decree, except that the last such writing shall be submitted to the United States sixty (60) calendar days prior to said anniversary date.

17.     For the duration of this Consent Decree, Defendant shall provide the United States with a copy of any written administrative or judicial fair housing complaint against Defendant or any of its officers, employees, agents, successors, or assigns, alleging unlawful disability discrimination under the FHA ("FHA Complaint"), and shall do so within ten (10) calendar days after Defendant's receipt of any FHA Complaint.  Upon reasonable notice, Defendant shall also provide the United States all non-confidential information it may request concerning any FHA Complaint.  Within ten (10) calendar days after the resolution of any FHA Complaint, Defendant shall provide counsel for the United States a copy of any document reflecting such resolution.

18.     For the term of this Consent Decree, Defendant is required to preserve all records related to this Consent Decree, including but not limited to all records relating to: (1) complaints against it or its agents or employees alleging discrimination in housing on the basis of disability; and (2) its receipt and processing of requests for reasonable accommodations.  Upon reasonable notice to Defendant, representatives of the United States shall be permitted to inspect and copy any such records (with redactions to the extent required by law) or investigate any complaints bearing on compliance with this Consent Decree at any and all reasonable times.

19.     For the term of this Consent Decree, Defendant shall provide the following information to the United States biannually:

a.  A list of all persons, including contact information, who inquired about or applied for a reasonable accommodation, whether the request was an initial request or a request for a renewal of an accommodation;

b.  the type of reasonable accommodation sought;

c.  whether or not, in each instance the accommodation was sought and/or granted;

d.  the date of the request and the reviewer or reviewers or the decision maker;

e.  if the request is denied, the reason for the denial; and

f.  whether a denied request was appealed and the outcome of the appeal, including the rationale for the denial.

Defendant shall furnish such information to the United States within fourteen (14) calendar days of the anniversary and six-month anniversary of the Effective Date.

## VII.    RESOLUTION, DURATION OF CONSENT DECREE, AND TERMINATION OF LEGAL ACTION

20.    This Consent Decree shall remain in effect for three (3) years following entry of this Consent Decree by the Court.  By consenting to entry of this Consent Decree, the parties agree that in the event that Defendant engages in any conduct occurring after entry of this Consent Decree that leads to a determination of a violation of the FHA, such conduct shall constitute a violation by Defendant pursuant to 42 U.S.C. § 3614(d)(1)(C)(i).

21.    The Amended Complaint in this action is hereby dismissed as to Defendant without prejudice to reinstatement in accordance with the next paragraph.

22.    The United States shall be entitled to reinstate the Amended Complaint in this Action at any time during the duration of this Consent Decree if the Court determines that Defendant has failed to perform, in a timely manner, any act required by this Consent Decree or has otherwise failed to act in conformance with any provision of this Consent Decree.

23.     The Court shall retain jurisdiction for the duration of this Consent Decree to enforce the terms of the Consent Decree.  The United States may move the Court to extend the duration of the Consent Decree in the interests of justice.  Defendant reserves the right to object to any such extension and to oppose any such motion.  The duration of the Consent Decree may also be extended by the mutual written agreement of the United States and Defendant, and approval by the Court.

24.     The United States and Defendant shall endeavor, in good faith, to resolve informally any differences regarding interpretation of and compliance with this Consent Decree prior to bringing such matters to the Court for resolution.  To that end, prior to seeking judicial intervention with respect to any alleged breach of any requirement of this Consent Decree, the United States shall provide Defendant with written notice of the alleged breach and a reasonable opportunity to respond.  Thereafter, in the event of a failure by Defendant to perform, in a timely manner, any act required by this Consent Decree or otherwise for Defendant's failure to act in conformance with any provision thereof, the United States may move this Court to impose any remedy authorized by law or equity, including, but not limited to, an order requiring performance of such act or deeming such act to have been performed, and an award of any damages, costs, and reasonable attorney's fees which may have been occasioned by the violation or failure to perform.

25.     Upon the expiration of the Consent Decree, the Amended Complaint in this action shall be dismissed with prejudice; however, paragraphs 1-5 of the Consent Decree shall constitute a permanent injunction.

26.     Contemporaneously with the execution of the Consent Decree, Complainant shall execute a release in the form attached hereto as Appendix C and provide the original of same to the United States to be held in escrow.  Within ten (10) business days after receiving notice via

email that the Substantial Completion Date (defined above in paragraph 9) has been achieved, the United States shall send the original release to Defendant's counsel, Steven S. Sieratzki, Esq., via overnight mail.

### VIII.   TIME FOR PERFORMANCE

27.     Any time limits for performance imposed by this Consent Decree may be extended by the mutual written agreement of the United States and Defendant.

### IX.     COSTS OF LITIGATION

28.     Each party to this litigation will bear its own costs and attorneys' fees associated with this litigation.

*[remainder of this page intentionally blank]*

The undersigned consent to this Consent Decree on behalf of the parties:

*For the United States:*

AUDREY STRAUSS
Acting United States Attorney

By:

BRANDON M. WATERMAN
ELLEN BLAIN
Assistant United States Attorneys
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel. No. (212) 637-2741/2743
Fax No. (212) 637-2730
brandon.waterman@usdoj.gov
ellen.blain@usdoj.gov

*For 111 East 88th Partners:*

By:

NEAL FELLENBAUM
Zegen & Fellenbaum
505 Park Avenue 20th fl.
New York, New York 10022
212 986-4848
Fax: 212 808-9808
Email: nfellenbaum@zfny.com

By:

EDWARD J. PHILLIPS
Keane & Beane
445 Hamilton Avenue 15th Floor
White Plains, New York 10601
914-946-4777
Fax: 914-946-6868
Email: ephillips@kblaw.com

*For 111 East 88th Partners:*

By:

ROBERT ERNSTOFF

By:

STEVEN SOLOMON SIERATZKI
Law Offices of Steven S. Sieratzki
40 Exchange Place Suite1800
New York, New York 10005
(212) 471-9525
Fax: (212) 482-1303
Email: steve@sieratzkilaw.com

SO ORDERED.

THE HONORABLE PAUL G. GARDEPHE
Dated: July 14, 2020

16

# APPENDIX A
## 111 EAST 88TH PARTNERS REASONABLE ACCOMMODATION POLICY

111 East 88th Partners is committed to granting reasonable accommodations to its rules, policies, practices, or services when such accommodations may be necessary to afford people with disabilities the equal opportunity to use and enjoy their dwellings, as required by federal, state and local law.  A reasonable accommodation may include a change or exception to a rule or policy that is needed because of a person's disability, or it may be a physical change to a unit or common area. It is 111 East 88th Partners' general policy to provide reasonable accommodations to individuals with disabilities whenever an individual has a disability and there is a disability-related need for the requested accommodation.  A disability-related need for a requested accommodation exists when there is an identifiable relationship, or nexus, between the requested accommodation and the individual's disability.

111 East 88th Partners accepts reasonable accommodation requests from persons with disabilities and those acting on their behalf. Reasonable Accommodation Request forms are available in your Management's Office, 242 West 49th Street, New York, NY 10019 and may be returned to that office when complete. They will then be forwarded to the 111 East 88th Partners for consideration. If you require assistance in completing the form, or wish to make the request orally, please contact Management at (212) 397-7838. 111 East 88th Partners will keep a record of all requests.

We will make a reasonably prompt decision on your request.  If the request is time-sensitive, please let us know and we will endeavor to expedite the decision-making process.  In the event we need additional information to make a determination, we will promptly advise you of the information needed. It is 111 East 88th Partners' policy to seek only the information needed to determine if a reasonable accommodation should be granted under federal, state or local law.  We will not ask about the nature or extent of your disabilities.  If we grant the request, you will receive a letter informing you of the grant.

If we deny the request, we will provide you with a letter stating all of the reasons for our denial. We will schedule a meeting at a mutually convenient time to discuss possible alternative accommodations.  If agreement on an alternative accommodation is not reached, we will send you a letter providing 111 East 88th Partners' decision on your requested accommodation and an explanation of 111 East 88th Partners' reasons for a denial or decision to grant an alternative accommodation.  If an individual with a disability believes that the request has been denied unlawfully or a response has been unreasonably delayed, then he or she may file a complaint by writing or calling any of the following:

| U.S. Department of Housing and Urban Development Office of Fair Housing and Equal Opportunity 26 Federal Plaza, Room 3532 New York, NY 10278-0068 1-800-669-9777 https://www.hud.gov/topics/ housing_discrimination | New York State Division of Human Rights One Fordham Plaza, 4th Floor Bronx, NY 10458 Tel No. (718) 741-8400 TDD: 1-718-741-8300 https://dhr.ny.gov/ | New York City Commission on Human Rights 100 Gold Street, Suite 4600 New York, NY 10038 (212) 306-7450 http://www.nyc.gov/cchr |
|---|---|---|

# ASSISTANCE ANIMALS

One common type of reasonable accommodation is allowing a person with a disability to keep an assistance animal.  An assistance animal is any animal that works, provides assistance, performs tasks for the benefit of a person with a disability, or provides emotional support that alleviates one or more identified symptoms or effects of a person's disability.  111 East 88th Partners is committed to ensuring that individuals with disabilities may keep such animals in 111 East 88th Partners to the extent required by federal, state and local law.

An animal that is trained to do work or perform tasks for an individual with a disability is known as a service animal.  It is often readily apparent that an animal is trained to do work or perform tasks for the benefit of a person with a disability, such as a dog that guides an individual with a visual impairment.  Where it is readily apparent that an animal is a trained service animal, for example, a dog trained to guide an individual with a visual impairment, 111 East 88th Partners will not inquire about the individual's disability or the animal's training.

In the case of a resident who requests a reasonable accommodation for an assistance animal that provides emotional support or other assistance that ameliorates one or more symptoms or effects of the resident's disability, 111 East 88th Partners may require a statement from a health or social service professional including a brief description of the basis to support his or her conclusions:

  i.  That the applicant has a disability, and
  ii. That the animal would provide emotional support or other assistance that would ameliorate one or more symptoms or effects of the disability.

A "health or social service professional" means an individual who is licensed or certified (unless exempt)[1] to provide medical care, therapy or counseling to persons with disabilities, including, but not limited to, doctors, physician assistants, psychiatrists, psychologists, or social workers.

In the case of a resident who requests a reasonable accommodation for an assistance animal that does work or performs tasks for the benefit of a person with a disability, 111 East 88th Partners may require that the resident provide:

  i.  A statement from a health or social service professional indicating that the person has a disability, and
  ii. Information that the animal has been individually trained to do work or perform tasks that would ameliorate one or more symptoms or effects of the disability, or information that the animal, despite lack of individual training, is able to do work or perform tasks that would ameliorate one or more symptoms or effects of the disability.

If an assistance animal both provides emotional support or other assistance that ameliorates one or more effects of a disability and does work or performs tasks for the benefit of a person with a physical disability, 111 East 88th Partners may require compliance with the requirements for either type of assistance animal, but not both.

[1] In certain circumstances, health and social service professionals are authorized by federal, state, or local law to provide treatment to patients and are exempt from licensure or certification requirements.

## FORM A: A<small>PPLICATION</small> F<small>OR</small> R<small>EASONABLE</small> A<small>CCOMMODATION</small>

**Complete this form if you have a disability and would like to request an accommodation. If you require assistance completing this form, or wish to make the request orally, please contact the Management Office at (212) 397-7838.**

**Unit owner name:** _____

**Address:** _____   **Telephone:** _____

**(only if the person requesting the accommodation is different from the unit owner:)**

**Person requesting accommodation:** _____

**Relationship to unit owner:** _____

1.      **Please describe the reasonable accommodation you are requesting:**

2.      **Please explain why this reasonable accommodation is needed. You need not provide detailed information about the nature or severity of the disability.**

3.      **If you are requesting permission to have an assistance animal in your apartment, please complete the following:**

   **(a) Is it readily apparent that the assistance animal is a trained service animal (for example, an animal trained to assist you with a visual impairment or similar disability)?**

   **____YES ____NO**

   **(b) If your answer to 3(a) above was NO, please complete the following:**

      i.   **Type of animal:** _____

      ii.  **Is the animal required because of a disability? ____Yes _____No**

      iii. **Does the animal perform work or do tasks for you because of your disability? _____Yes _____No**

*[form continues on next page]*

**If the animal performs work or tasks for you, please provide the following:**

(1) **A statement from a health or social service professional indicating that you have a disability (*i.e.*, you have a physical or mental impairment that substantially limits one or more major life activities). You may use, but are not required to use, Form B (if Form B is not used, you will at least make Form B available for the health or social service professional to review).**

(2) **An explanation of how the animal has been trained to do work or perform tasks that ameliorate one or more symptoms or effects of your disability or, if the animal lacks individual training, how the animal is able to do work or perform tasks that ameliorate one or more symptoms or effects of your disability.**

(3) **Please submit a photograph of the animal after you have selected an animal.**

**If the animal does not perform work or do tasks for you, but provides emotional support or ameliorates one or more effects of your disability, please provide the following:**

(1) **A statement from a health or social service professional indicating: (a) that you have a disability; (b) the animal would provide emotional support or other assistance that would ameliorate one or more symptoms or effects of your disability; and (c) how the animal ameliorates the symptoms or effect(s). You may use, but are not required to use, Form B (if Form B is not used, you will at least make Form B available for the health or social service professional to review).**

(2) **Please submit a photograph of the animal after you have selected an animal.**

4.     **If the assistance animal is a dog or a cat, please provide copies of the rabies tag or certificate that is required by New York law. If you have not selected an animal at the time you complete this application, 111 East 88th Partners may approve the application with the condition that, if you select a dog or a cat, you must submit copies of the rabies tag or certificate that is required by New York law, before the selected animal moves in.**

5.     **If you are requesting a different modification or accommodation, please describe it here:**

_____ **Date:**_____
**Signature**

*[assistance animal guidelines follow on next page]*

<u>**111 EAST 88TH PARTNERS GUIDELINES REGARDING ASSISTANCE ANIMALS**</u>

A.  **111 East 88th Partners will consider reasonable accommodation requests consistent with the enclosed policy regarding disabilities that meet the definition set forth in any one of the following relevant statutes:**

1.  **Federal: The Fair Housing Act defines a person with a "handicap" as one who: (a) has a physical or mental impairment which substantially limits one or more of such person's major life activities; or (b) has a record of having such an impairment; or (c) is regarded as having such an impairment, but such term does not include current, illegal use of or addiction to a controlled substance (as defined in Section 102 of the Controlled Substances Act (21 U.S.C. § 802).**

2.  **State: The New York State Executive Law defines a disability as: (a) a physical, mental or medical impairment resulting from anatomical, physiological, genetic or neurological conditions which prevents the exercise of a normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques or (b) a record of such impairment or (c) a condition regarded by others as such an impairment.**

3.  **NYC: The New York City Administrative Code defines a disability as: (a) any physical, medical, mental or psychological impairment, or a history or record of such impairment. (b) The term "physical, medical, mental, or psychological impairment" means: (1) an impairment of any system of the body; including, but not limited to: the neurological system; the musculoskeletal system; the special sense organs and respiratory organs, including, but not limited to, speech organs; the cardiovascular system; the reproductive system; the digestive and genito-urinary systems; the hemic and lymphatic systems; the immunological systems; the skin; and the endocrine system; or (2) a mental or psychological impairment.**

B.  **111 East 88th Partners will review and respond promptly to all reasonable accommodation requests.**

C.  **All information received by 111 East 88th Partners regarding an individual's disability, including physical, mental, psychological, and/or psychiatric conditions, shall be kept confidential unless the individual authorizes the release of the information or 111 East 88th Partners is required to produce the information in response to a Court order, on notice to the affected individual(s).**

D.  **If the 111 East 88th Partners resident has a disability and a disability-related need for a reasonable accommodation under federal, state or local law, 111 East 88th Partners will grant such accommodation, including a request to keep a service or assistance animal. 111 East 88th Partners will not retaliate against any person because that individual has requested or received a reasonable accommodation. 111 East 88th Partners will not discourage any individual from making a reasonable accommodation request, including a request to keep a service or assistance animal. While it is 111 East 88th Partners' policy to not allow any pets at 111 East 88th Partners, service and assistance animals are not pets. However, a 111 East 88th Partners resident must request an exception to 111 East 88th Partners' pet policy in order to keep an assistance animal at 111 East 88th Partners.**

E. **111 East 88th Partners  may deny a request or require the removal of a particular assistance or service animal from the premises if the animal poses a direct threat (i.e., a significant risk of substantial harm) to the health or safety of other individuals that cannot be eliminated or reduced to an acceptable level by another reasonable accommodation, considering the health and safety of the other individual(s) and the need for an accommodation, or if the animal would cause substantial physical damage to the property of others that cannot be reduced or eliminated by another reasonable accommodation. 111 East 88th Partners will base such determinations upon consideration of the behavior of the particular animal at issue, and not on speculation or fear about the types of harm or damage an animal may cause.**

F. **When assistance animals are in 111 East 88th Partners' common or public areas, they must be kept on a leash or in a carrier or cage, unless those devices prevent service animals from performing a disability-related task. Additionally, like any other unit owner, owners of service or assistance animals remain subject to the provisions of their Occupancy Agreements, with the exception that they are allowed to occupy the premises with their service or assistance animals. Similarly, owners of service or assistance animals shall comply with all state and local animal laws, including but not limited to Section 1310 of the New York Public Health Code requiring animal owners to clean up animal waste, except when such laws are preempted by the Fair Housing Act, Section 504 of the Rehabilitation Act, or the Americans with Disabilities Act or the owner is entitled to a reasonable accommodation.**

G. **111 East 88th Partners may take action against the owner for noise or damages caused by a service or assistance animal to the same extent that it takes such action against unit owners who have caused similar noise or damages, or as otherwise permissible under the Condominium's constituent documents and applicable law.**

### FORM B: <span style="font-variant:small-caps">Assistance Animal Requests: Health Care Professional Form</span>

**Unit owner name:** _____

**Address:** _____

**Telephone:** _____


**I, _____ (applicant name) intend to request that 111 East 88th Partners permit me to keep an assistance animal as a reasonable accommodation for my disability. In connection with that application, I am requesting that you complete this form regarding my disability.**


_____ **Date:** _____
Signature

**(only if the person requesting the accommodation is different from the unit owner:)**

**Person requesting accommodation:** _____

**Relationship to unit owner:** _____

---

## TO BE COMPLETED BY HEALTH CARE PROFESSIONAL

**NAME:** _____

**ADDRESS:** _____

**TELEPHONE:** _____

**1.   Does the individual identified above have a disability[1] that substantially limits one or more major life activities?  The term "major life activity" means those activities that are of central importance to daily life, such as seeing, hearing, walking, breathing, performing manual tasks, caring for one's self, learning, and speaking. This list of major life activities is not exhaustive.  A major life activity is "substantially limiting" if the impairment prevents or severely restricts the major life activity and has a permanent or long term impact.**


**2.   Does or would an assistance animal provide disability-related assistance to the individual? One example of assistance is alleviating one or more of the symptoms or effects of the disability.**

---

[1] A disability under the federal Fair Housing Act, codified at 42 U.S.C. §§ 3601-3619, includes, but is not limited to, such diseases and conditions as orthopedic, visual, speech and hearing impairments, cerebral palsy, autism, epilepsy, muscular dystrophy, multiple sclerosis, cancer, heart disease, diabetes, Human Immunodeficiency Virus infection, mental retardation, emotional illness, drug addiction (other than addiction caused by current, illegal use of a controlled substance) and alcoholism.

**3.   For animals who do not perform work or do tasks for the individual, how would the animal ameliorate one or more of the symptoms or effects of the disability?**

**4.   If you would like to submit additional supporting materials, please provide them with this form.**

**NAME:**     _____

**SIGNATURE:**   _____

**TITLE:**     _____

**DATE:**     _____

**APPENDIX B**

**ACKNOWLEDGMENT OF RECEIPT OF CONSENT DECREE**

I _____, am an employee of _____ and my duties include _____.  I have received and read a copy of the Consent Decree entered in *United States of America v. 111 East 88th Partners*, No. 16 Civ. 9446 (PGG) (S.D.N.Y.), and have been given instruction on (1) the terms of this Consent Decree, (2) the requirements of the Fair Housing Act, particularly related to the Act's reasonable accommodation requirements, and (3) my responsibilities and obligations under the Consent Decree and the Fair Housing Act.  I have had all of my questions concerning the Consent Decree answered to my satisfaction.


Dated: _____


_____
Employee Signature

25

## APPENDIX C

## RELEASE FORM

In consideration of the obligations outlined in paragraph 8 of the Consent Decree entered in *United States of America v. 111 East 88th Partners*, No. 16 Civ. 9446 (PGG) (KHP) (S.D.N.Y.), I hereby release the defendant in said action, 111 East 88th Partners, together with its current and former corporate parents, affiliates, officers, directors, employees, partners, attorneys, insurers, agents, predecessors, successors and assigns ("Releasees"), from any and all causes of action, controversies, damages, charges, costs, expenses, obligations, attorneys' fees, losses and liabilities, claims and demands whatsoever, legal or equitable, asserted or unasserted, that I may have against Releasees arising out of the facts alleged in the Amended Complaint in the above-styled action and in the pending summary holdover proceedings in the Civil Court, NY County (Index Nos. 98118/06 and 052950/20) and that occurred before the date of this release.

I fully acknowledge and agree that this release of the Releasees shall be binding on my heirs, representatives, executors, successors, administrators, and assigns.

I hereby acknowledge that I have read and understand this release and have executed it voluntarily and with full knowledge of its legal consequences.

**GREGORY REICH, RELEASOR**

_____
(Signature)

_____
(Print name)

_____
(Address)

_____
(Date)